**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| State of South Carolina and South Carolina Department of Administration,<br><br>Plaintiffs,<br><br>v.<br><br>Deb Haaland, in her official capacity as United States Secretary of the Interior; the United States Department of the Interior; the United States Fish and Wildlife Service; Martha Williams in her official capacity as Chief of the U.S. Fish and Wildlife Service; Mike Oetker, in his official capacity as Acting Regional Director, Southeast Region, United States Fish and Wildlife Service; Cynthia Martinez, in her official capacity as Chief National Wildlife Refuge System; and Sarah Dawsey in her official capacity as Manager of the Cape Romain National Wildlife Refuge,<br><br>Defendant. | **Civil Case No.: 2:23-cv-3651-BHH**<br>**COMPLAINT** |

**BACKGROUND**

1. This action is brought by the State of South Carolina and the South Carolina Department of Administration (collectively, the State) because a controversy has arisen between the Plaintiffs and the Defendants over the control of the "taking of shellfish, finfish, and other salt water species within the refuge boundary" of the Cape Romain National Wildlife Refuge under a lease executed with the United States Fish and Wildlife Service by the Budget and Control Board

of the State on February 21, 1991. Exhibit A.  Under the lease, the State controls the taking or taking or harvesting of the above species, not the Service.[1]

2.      This lease between the State of South Carolina and the U.S. Fish and Wildlife Service covers approximately half of the area within the Cape Romain National Wildlife Refuge and expressly states that it is "[s]ubject to . . . the right of the State of South Carolina to authorize the taking of shellfish, finfish and other salt water species within the refuge boundary." Ex. A at p. 2.  This right is controlling as between the State and the Service and may not be limited by the Service under the lease.  The Service has failed to adhere to this provision in the lease through a series of actions described below.

3.      The Refuge was established in 1932 as a migratory bird refuge and consists of 66,306 acres of lands including islands, salt marsh and waters. https://www.fws.gov/refuge/cape-romain/about-us.  The Refuge includes lands leased to the Service under the above lease and some other lands covered by easement.  See Exhibit B, Map[2], and Exhibit C, Easement.  It also contains over 32,000 acres conveyed by statute.  S.C. Code Ann. §3-3-210.  As to lands subject to the lease, the lease controls as to the taking or harvesting of salt water species, and the Service has violated the lease.

4.      The State has a profound interest in its tidelands and waterways, including those in Cape Romain, as has been recognized by numerous decisions of its Courts.  *See, eg. Hoyler v. State*, 428 S.C. 279, 292, 833 S.E.2d 845, 852 (Ct. App. 2019), reh'g denied (Oct. 17, 2019), cert.

---

[1] Although horseshoe crabs are salt water species within the Refuge and not shellfish, this suit is not brought for the purpose of determining whether horseshoe crabs or other salt water species should or should not be harvested.
[2] The State attaches the map for illustrative purposes only and does not concede that its boundaries are accurate.

dismissed (Jan. 29, 2020) "Our State's tidelands are a precious public resource held in trust for the people of South Carolina." Title to lands lying between the mean high water mark and mean low water mark is held by the State in trust for public purposes absent a grant from the State or the King of England. *See Hobonny Club v. McEachern*, 272 S.C. 392, 252 S.E. 2d 133 (1979). Moreover, the State's Constitution provides that its waters are public highways. S.C. Const. art. XIV, § 4 ("All navigable waters shall forever remain public highways free to the citizens of the State . . . .").

## THE PARTIES

**5**.     The State of South Carolina is a corporate, governmental entity comprising the entirety of the State of South Carolina. The State is the presumptive owners of all tidal lands in the State below mean high water unless a person or entity can prove a grant from the sovereign to the land within their chain of title. To overcome the State's presumptive ownership of lands below mean low water, a person or entity must prove a grant by statute of the General Assembly. This ownership of the State includes those lands leased to the Service.

6.     The Department of Administration is the successor to the Budget and Control Board as to real property management for the State and, in particular, as to the lease. S.C. Code Ann. §§1-11-10 and 1-11-55. The Department has authority as to State properties as designated by statute.

7.     Deb Haaland, is sued in her official capacity as Secretary of the Interior, United States Department of the Interior. She has such responsibilities as are assigned to her office by federal law including being head of the Department of Interior (43 U.S.C.A. §1451) and

administration of the National Wildlife Refuge System through the United States Fish and Wildlife Service. *See,* 16 U.S.C.A. § 668dd & 43 U.S.C.A. § 1457.

8.      The United States Department of the Interior is and agency of the United States and has such responsibilities as are assigned to it by law including administration of the United States Fish and Wildlife Service.  See, eg, 43 U.S.C.A. §§1451 and 1457.

9.      The U.S. Fish and Wildlife Service is the lessee under the above described lease.  It is a federal agency within the U.S. Department of the Interior that is responsible for the management of the National Wildlife Refuge System on behalf of DOI as specified in Federal law. *See,* 16 U.S.C.A. § 668dd

10.     Martha Williams is sued in her official capacity as Director of the U.S. Fish and Wildlife Service.  She has such responsibilities as are assigned to her by law for the National Wildlife Refuge System.

11.     Mike Oetker, is sued in his official capacity as Acting Regional Director, Southeast Region, of the U.S. Fish and Wildlife Service.   He has such responsibilities as are assigned to him by law for the National Wildlife Refuge System.

12.     Cynthia Martinez, is sued in her official capacity as Chief of the National Wildlife Refuge System, and has such responsibilities as are assigned to her by law for the System.

13.     Sarah Dawsey is sued in her official capacity as Manager of the Cape Romain National Wildlife Refuge. She has such responsibilities as are assigned to her by law for the National Wildlife Refuge System and by the Chief of the System under the law.

## THE LEASE

14. The above lease was entered on February 21, 1991, and covers the following:

> all of the State of South Carolina's interest in all marsh lands, sand banks, shores, edges, lands uncovered by water at low tide, and all waterbottoms and waters which are included within the boundaries of the . . . Refuge or which are contiguous and adjacent to the easterly boundary and fronting on the Atlantic Ocean to mean low tide, containing 31,000 acres, more or less . . . .

It is "subject to . . . [t]he right of the State of South Carolina to authorize the taking of shellfish, finfish, and other salt water species within the refuge boundary."

15. Under the lease, the State controls the taking or harvesting of salt water species on lands below mean high water on Marsh Island within the Refuge and any other such areas below mean high water covered by the lease including, but not limited to, commercial taking or harvesting.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, 1346 and 5 U.S.C. §§ 702 -703 and may issue declaratory and further relief pursuant to 5 U.S.C. §§ 705–706 and 28 U.S.C. §§ 2201 and 2202. Plaintiffs are entitled to bring this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06.

17. This Court has personal jurisdiction over Defendants because they are agents and officers of the United States.

18. Venue is proper in this Court and in the Charleston Division of the Court pursuant to 28 U.S.C. § 1391(b)(2) and (e) and Local Civil Rule 3.01(A)(1) DSC, because the State has an

interest in the lands and waters located within the Refuge, the lease at issue covers land within the Refuge, and the Defendant maintains an office within this Division.

### ALLEGATIONS OF FACT

### The Regulation

19. Regulation 50 C.F.R. § 26.34(mm) provides, in pertinent part, as follows:

(1) Cape Romain National Wildlife Refuge . . . .

(v) We close Marsh Island, White Banks, and Sandy Point to public entry from February 15 through September 15 to protect nesting birds. This closed area extends from the low mean water mark to the highest elevation on these islands.

20. This regulation violates the lease in that it closes entry to the specified areas between mean high and low water mark as well as to upland and thereby bars harvesting of salt water species under the lease.

### The Memorandum

21. By the attached Memorandum stamped August 6, 2021, the Regional Chief, National Wildlife Refuge System of the Fish and Wildlife Service of the Department of the Interior, directed the Refuge Manager at the Cape Romain National Wildlife Refuge to post the following:

> Beginning August 15, 2021, anyone who wishes to solicit or conduct commercial activities, including, but not limited to, horseshoe crab harvesting within the boundaries of Cape Romain National Wildlife Refuge (Refuge) must apply for a Special Use Permit (SUP) from the U.S. Fish and Wildlife Service.
>
> If a SUP is issued, the permittee must comply with all special conditions attached to that SUP.

> Reminder: The entire Refuge is closed from sunset to sunrise, and specific areas within the Refuge are subject to periodic closures. These closures take precedence over any authorization contained in a SUP.

22. This August 6, 2021, Memorandum of the Service is inconsistent with the Service's course of conduct during the over 30 years that lease has been in effect. Although the Service has said, at times, that it has the authority to close Marsh Island, within the Refuge, to boat landings, it has not enforced the closure prior to the issuance of the above Memorandum, and it has recognized the State's authority over the taking or harvesting of salt water species.

23. The Memorandum is inconsistent with Regulation 50 C.F.R. § 26.34(mm) in that it expands the closures in the Regulation to year round and in doing so also violates the lease.

24. The Memorandum functions as a rule under 5 U.S.C. §551(4), but it did not undergo the notice and comment procedure under 5 U.S.C. §553 and thereby violates the APA.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Pursuant to the lease, the USF&W Service Lacks Authority to Control or Otherwise Limit Taking or harvesting of Salt Water Species in the Refuge**

25. Each of the above allegations is incorporated by reference into this cause of action.

26. Under the lease, the State of South Carolina retains the sole authority over the taking or harvesting of shrimp, finfish and other saltwater species within the Refuge including, but not limited to, commercial taking or harvesting. The State did not lease any such authority to the Service.

27. Any actions of the Service to control, restrict access to or require permits for the taking or harvesting of the above species under the lease, including closures of Marsh Island and requiring Special Use Permits, are inconsistent with the lease and are void.

7

**SECOND CAUSE OF ACTION**
**The August 2021 Memorandum is a Rule that is Invalid Because It Failed to Follow Notice and Comment Procedures Under the APA**

28. Each of the above allegations is incorporated by reference into this cause of action.

29. The APA defines "rule" as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy[.]" 5 U.S.C. §551(4).

30. Further, the APA requires agencies issuing rules to conduct notice-and-comment rulemaking. 5 U.S.C. §553.

31. The August 2021 Memorandum constitutes a rule within the APA's definition in §551(4), and no exceptions to notice-and-comment rulemaking were invoked nor are any exceptions available. The Service failed to follow the requirements for notice and comment rulemaking in violation of the APA.

32. The Memorandum is inconsistent with the lease and is void.

**THIRD CAUSE OF ACTION**
**(Arbitrary, Capricious Action in Violation of the APA)**

31. Each of the above allegations is incorporated by reference into this cause of action.

32. Pursuant to the Administrative Procedure Act, agency action that is "arbitrary [or] capricious" is unlawful and must be set aside by a court of competent jurisdiction. 5 U.S.C. § 706(2)(A).

33. The Regulation 50 C.F.R. § 26.34(mm), Memorandum and any other actions that would restrict the State's authority over the taking or harvesting of the above species including,

but not limited to closures of Marsh Island and requiring Special Use Permits are arbitrary and capricious and, therefore, unlawful and must be set aside.

34. The August 6, 2021 Memorandum exceeds the scope of the Regulation and is, therefore, invalid.

## FOURTH CAUSE OF ACTION
### Unlawful Action in Violation of APA

35. Each of the above allegations is incorporated by reference into this cause of action.

36. Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or "in excess of statutory . . . authority, or limitations, or short of statutory right." See 5 U.S.C. § 706(2)(A), (C).

37. The Regulation, Memorandum and any other actions that would restrict the State's authority over the taking or harvesting of the above species including, but not limited to closures of Marsh Island and requiring Special Use Permits are unlawful under §706(2)(A), (C) and must be set aside.

## FIFTH CAUSE OF ACTION
### Tenth Amendment

38    Each of the above allegations is incorporated by reference into this cause of action.

39. Pursuant to the Tenth Amendment of the United States Constitution, the State retains authority over the taking or harvesting of salt water species on its lands and waters including those within the Cape Romain National Wildlife Refuge.

40. Neither the lease nor the easement relinquishes the State's control over the taking or harvesting of salt water species.

9

41.     The Regulation, Memorandum and any other actions that would restrict the State's authority over the taking or harvesting of salt water species including, but not limited to closures of Marsh Island and requiring Special Use Permits violate the Tenth Amendment.

## SIXTH CAUSE OF ACTION

### Waiver and Estoppel

42.     Each of the above allegations is incorporated by reference into this cause of action.

43.     By signing the lease with the State under which the State controls the taking or harvesting of salt water species on lands below mean high water on Marsh Island within the Refuge and any other such areas below mean high water covered by the lease, the Defendants have waived any claim that, *arguendo,* they may have to the control the harvesting or taking of salt water species and are estopped to deny that the State has such authority.

44.     Through their course of conduct described above in paragraph 20, the Defendants have waived any claim that, *arguendo*, they may have to the control the harvesting or taking of salt water species and are estopped to deny that the State has such authority.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that this Court:

A.     Issue a declaratory ruling that the Service lacks authority to impose any limits on the taking or harvesting of salt water species in the Refuge and that the 2021 Memorandum, Regulation 50 CFR 26.34(mm) and any related actions including the closure of Marsh Island and requirements of special use permits are invalid.

B.  Issue an injunction barring the Service from enforcing the Memorandum, Regulation, requiring special use permits, closing Marsh Island or taking any other action that would restrict the State's authority to control the taking or harvesting of salt water species within the Refuge.

C.  Award Plaintiffs all costs and expenses of this action; and

D.  Award such additional relief as the Court deems proper.

> DAVID K. AVANT
> General Counsel
> Federal ID No. 9148
> PO Box 2825
> Columbia, SC 29211
> Email: David.Avant@admin.sc.gov
>
> Counsel for the South Carolina Department of Administration
>
> ALAN WILSON
> Attorney General
> Federal ID No.10457
>
> ROBERT D. COOK
> Solicitor General
> Federal ID No. 285
> Email: rcook@scag.gov
>
> /s/ J. Emory Smith, Jr.
> J. EMORY SMITH, JR.
> Deputy Solicitor General
> Federal ID No. 3908
> Email: esmith@scag.gov
>
> THOMAS T. HYDRICK
> Assistant Deputy Attorney General
> Federal ID No. 13322
> Email: ThomasHydrick@scag.gov
>
> [Signature block continues next page]

                    JOSEPH D. SPATE
                    Assistant Deputy Attorney General
                    Federal ID No. 13100
                    Email: josephspate@scag.gov

                    Office of the Attorney General
                    Post Office Box 11549
                    Columbia, South Carolina 29211
                    Phone: (803) 734-3642
                    Fax: (803) 734-3677

July 28, 2023                                      Counsel for Plaintiffs